UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IRENE BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | 19 C 6009 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| C.R. BARD, INC., and BARD PERIPHERAL VASCULAR, INC., | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this diversity suit against C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (together, "Bard"), Irene Baker brings state law claims in connection with a Bard Inferior Vena Cava ("IVC") filter that was implanted in her body and, contrary to her expectations, remains there to this day. Doc. 1. Bard moves for summary judgment on statute of limitations grounds. Doc. 33. The motion is granted.

**Background**

The court recites the material facts as favorably to Baker as the record and Local Rule 56.1 permit. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). At this juncture, the court must assume the truth of those facts, but does not vouch for them. *See Gates v. Bd. of Educ. of Chi.*, 916 F.3d 631, 633 (7th Cir. 2019).

An IVC filter is designed to prevent blood clots from traveling from the lower body to the heart and lungs. Doc. 39 at ¶ 5. On July 2, 2012, in advance of abdominal surgery, Baker was implanted with a Bard Eclipse IVC Filter–Femoral that was part of Bard's "retrievable" filter product line. *Id*. at ¶ 6; Doc. 41 at ¶ 15.

1

On November 30, 2012, some five months after the surgery, Baker told her cardiologist that she wanted the IVC filter removed. Doc. 39 at ¶¶ 8-9; Doc. 35-1 at 145-148. A retrieval procedure on December 6, 2012 was unsuccessful. Doc. 39 at ¶¶ 10-11. Baker's cardiologist wrote that the filter "is tilted to the [right] and the hook is facing the wall [of the IVC] and is imbedded into the wall," such that the cardiologist was "[u]nable to remove the filter despite multiple attempts." *Id*. at ¶ 11 (third alteration in original). On January 23, 2013, Baker again met with her cardiologist and was told that the filter was irretrievable. *Id*. at ¶ 12.

Baker does not have a medical background or education, and no doctor told her that the filter was potentially defective or the cause of the failed removal procedure. Doc. 41 at ¶¶ 16-17. Baker did not realize that her injuries were caused by defects in the filter until August 2018, when she saw a television ad about IVC filter complications. *Id*. at ¶¶ 18-19.

Baker filed this suit on May 8, 2019. Doc. 39 at ¶ 14. She brings state law claims for Strict Products Liability-Manufacturing Defect; Strict Products Liability-Information Defect (Failure to Warn); Strict Products Liability-Design Defect; Negligence-Design; Negligence-Manufacture; Negligence-Failure to Recall/Retrofit; Negligence-Failure to Warn; Negligent Misrepresentation; Negligence *Per Se*; Breach of Express Warranty; Breach of Implied Warranty; Fraudulent Misrepresentation; Fraudulent Concealment; Violation of Applicable (Illinois) Law Prohibiting Consumer Fraud and Unfair and Deceptive Trade Practices; and Punitive Damages. Doc. 1 at ¶ 12; *see* Doc. 15 at 2-3 (the parties' status report setting forth Baker's claims and invoking the diversity jurisdiction). Discovery has not closed, and Baker has not yet received her complete medical records and her treating physicians have not been deposed, Doc. 41 at ¶¶ 21-23, but she did not move under Civil Rule 56(d) to defer consideration of Bard's summary judgment motion pending the completion of that discovery.

**Discussion**

I.  **Personal Injury and Product Liability Claims**

Baker brings negligence and strict product liability claims, which allege that she suffered personal injury from the IVC filter. Doc. 1 at ¶ 12. As Bard explains, Doc. 34 at 6, and Baker does not dispute, Doc. 38, those claims arise from the filter's irretrievability.

The statute of limitations in Illinois for personal injury and product liability claims is two years. *See* 735 ILCS 5/13-202, 213(d). The parties agree that Illinois had adopted a "discovery rule" providing that the limitations period does not commence until "the injured plaintiff knows or reasonably should have known that [she] has been injured and that [her] injury was wrongfully caused." Doc. 38 at 7 (quoting *Golla v. Gen. Motors Corp.*, 657 N.E.2d 894, 898 (Ill. 1995)); *see* Doc. 34 at 4. The discovery rule does not provide that the limitations period begins to run only when the plaintiff has "knowledge that an actionable wrong was committed; rather, a person knows or reasonably should know an injury is 'wrongfully caused'"—thus commencing the limitations period—"when he or she possesses 'sufficient information concerning [an] injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved.'" *Caywood v. Gossett*, 887 N.E.2d 686, 692 (Ill. App. 2008) (alteration in original) (quoting *Hoffman v. Orthopedic Sys., Inc.*, 765 N.E.2d 116, 122 (Ill. App. 2002)). Put another way, the limitations period commences "when the plaintiff becomes aware that the cause of [her] problem stems from another's negligence and not from natural causes." *Castello v. Kalis*, 816 N.E.2d 782, 789 (Ill. App. 2004) (quoting *Saunders v. Klungboonkrong*, 501 N.E.2d 882, 885 (Ill. App. 1986)). At that point, "the injured person has the burden to inquire further as to the existence of a cause of action." *Brummel v. Grossman*, 103 N.E.3d 398, 409 (Ill. App. 2018).

Baker does not dispute that from late 2012 through January 23, 2013, she had an unsuccessful IVC filter removal and a subsequent medical appointment concerning the failed removal where she was told of the filter's irretrievability. Doc. 38 at 8; Doc. 39 at ¶¶ 10-12. Baker nonetheless maintains that the limitations period did not start running until August 2018, when she saw a television ad about IVC filter complications, because before that point she had "not realize[d] or suspect[ed] that she had suffered an injury that was wrongfully caused by the IVC filter." Doc. 38 at 7. Baker does not contend that she thought her injury had natural causes, though she asserts that she did not recognize "the causal connection between her injury and the wrongful acts of Bard" until she saw the ad. *Id*. at 11. According to Baker, there is "no evidence that[, before seeing the ad, she] was ever alerted that her IVC filter was potentially defective, was the cause of any of her injuries, or posed a danger to her health as a result of its unsuccessful removal." *Id*. at 8. Moreover, Baker maintains that "many of the injuries she suffers, including anxiety and emotional distress, could not arise until August of 2018 when she realized the risk the IVC filter posed to her." *Id*. at 10.

Baker's negligence and strict product liability claims are time-barred. She was implanted with an IVC filter that was supposed to be retrievable. Doc. 39 at ¶¶ 1, 6. She had an appointment with a physician about removing the filter, had a failed removal attempt, and had a follow-up appointment over a month later, where she was told of the filter's irretrievability. *Id*. at ¶¶ 7-12. At the latest, Baker reasonably should have known after her last appointment, which took place on January 23, 2013, that something was amiss and that the filter did not work as anticipated. The limitations period thus commenced no later than January 23, 2013. *See Golla*, 657 N.E.2d at 901 (approvingly citing *Cuerton v. American Hospital Supply Corp.*, 482 N.E.2d 187 (Ill. App. 1985), for the proposition that, under the discovery rule, the limitations period

4

commences when the plaintiff learned that "the [medical] device failed"); *Hoffman*, 765 N.E.2d at 121-22 (holding under the discovery rule that the plaintiff reasonably should have known that her injuries were caused by wrongful conduct where they "were unrelated to any preexisting condition" and she had "reported conversations with medical personnel and [retained] an attorney to investigate" the injuries).

In pressing the contrary result, Baker cites *Roper v. Markle*, 375 N.E.2d 934 (Ill. App. 1978), which, applying the discovery rule, held that the plaintiff did not have the knowledge necessary to commence the limitations period where she could not have known that her injury was caused by negligence "rather than by some non-negligent organic cause." *Id*. at 938-39. But the facts here align with those for which *Roper* acknowledged the limitations period would have commenced—when a plaintiff discovers a foreign object has been left in her body. *See id*. at 938. As in that circumstance, Baker's "awareness of a physical problem also carrie[d] with it awareness of its wrongful causation." *Ibid*.

Baker does not maintain that she thought the filter's irretrievability had natural or organic causes. Thus, although she may not have known who or what was at fault, it became her burden by January 23, 2013 at the latest to inquire further to determine who or what was at fault, thus commencing the limitations period. *See Mitsias v. I-Flow Corp.*, 959 N.E.2d 94, 107 (Ill. App. 2011) (recognizing that a "determination that plaintiff's product liability claim would have been discoverable through diligent investigation … comports with our supreme court's concern that putative plaintiffs investigate potential claims instead of slumbering on their rights") (citing *Nolan v. Johns-Manville Asbestos*, 421 N.E.2d 864, 868 (Ill. 1981)); *Nolan*, 421 N.E.2d at 868 ("[A]n injured person is not held to a standard of knowing the inherently unknowable, yet once it appears that an injury was wrongfully caused, the party may not slumber on [her] rights.")

(citation omitted). And Baker's argument that some of her injuries—distress and anxiety—had not manifested by that point has no bearing on the discovery rule. *See Golla*, 657 N.E.2d at 899-900 ("This court has never suggested that plaintiffs must know the full extent of their injuries before the statute of limitations is triggered. Rather, our cases adhere to the general rule that the limitations period commences when the plaintiff is injured, rather than when the plaintiff realizes the consequences of the injury or the full extent of her injuries.").

In sum, the two-year limitations period for Baker's personal injury and product liability claims expired by January 23, 2015 at the latest, over four years before she filed this suit. Bard therefore is entitled to judgment on those claims.

## II. Breach of Warranty Claims

Baker also brings breach of express warranty and breach of implied warranty claims. Doc. 1 at ¶ 12. She describes the IVC filter as being warrantied to catch blood clots. Doc. 38 at 13.

Illinois law provides that a breach of warranty claim "must be commenced within four years after the cause of action has accrued." 810 ILCS 5/2-725(1). "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance[,] the cause of action accrues when the breach is or should have been discovered." 810 ILCS 5/2-725(2). Baker contends that because the IVC filter's warranty extends to its future performance, the breach did not occur until she "realize[d] that she suffered wrongfully-caused injuries." Doc. 38 at 13-14.

Even assuming the filter's warranty extended to its future performance, Baker either did discover or should have discovered the breach by January 23, 2013 at the latest. As discussed above, the device plainly was not acting as expected, and a reasonable person in Baker's shoes

6

would have been on notice of a potential breach at that point. *See Singer v. Sunbeam Prods., Inc*, 2016 WL 1697777, at *2-3 (N.D. Ill. Apr. 28, 2016) (where the plaintiff's humidifier included an express warranty extending to future performance, holding that the plaintiff discovered or should have discovered the breach of the warranty at the time the humidifier caused a fire at her house). Because Baker did not file this suit until more than four years later, her breach of warranty claims are time-barred.

### III. Fraud Claims

Finally, Baker brings common law and statutory fraud claims. Doc. 1 at ¶ 12; Doc. 38 at 14. Bard characterizes those claims as "boil[ing] down to [an] alleged misrepresentation of the ability to retrieve the device," Doc. 34 at 8 (internal quotation marks omitted), and Baker does not contest that characterization, Doc. 38 at 14.

The parties agree that the statute of limitations for Baker's fraud claims is five years. Doc. 34 at 8; Doc. 38 at 14; *see* 735 ILCS 5/13-205. (The statutory fraud claims have a shorter statute of limitations, *see* 815 ILCS 505/10a(e), but neither party addresses that issue and the point is immaterial in any event.) "The statute of limitations applicable to fraud claims begins to run when the claimant discovers or should have discovered that [she] has been injured by a wrongful act." *In re Collazo*, 817 F.3d 1047, 1050 (7th Cir. 2016) (citing *Knox Coll. v. Celotex Corp.*, 430 N.E.2d 976, 979-80 (Ill. 1981)). Bard asserts that the limitations period commenced once Baker knew her IVC filter could not be retrieved because her claims turn on an alleged misrepresentation about its retrievability. Doc. 34 at 8. Baker contends that the limitations period did not start running until August 2018, when the television ad led her to suspect that her injuries were wrongfully caused by the filter. Doc. 38 at 14.

Baker's fraud claims are time-barred. She does not dispute Bard's submission that her fraud claims arise from representations that the filter could be retrieved. And as shown above,

7

Baker discussed with a physician her desire to have the filter removed, had a failed removal procedure, and had a subsequent appointment on January 23, 2013, where she learned of the filter's irretrievability. Doc. 39 at ¶¶ 7-12. At the latest, a reasonable person would have known that the device was not retrievable as of January 23, 2013, such that she would have inquired further to determine whether the representations she had received regarding its retrievability were fraudulent. *Cf. Wolinsky v. Life Ins. Co. of Ga.*, 2002 WL 664075, at \*2 (N.D. Ill. Apr. 23, 2002) (holding that the plaintiffs' fraud claims accrued when they received a written insurance policy that allegedly contradicted the oral representations that induced them to purchase the policy).

## Conclusion

Bard's summary judgment motion is granted. Judgment will be entered in favor of Bard and against Baker.

March 19, 2020

_____

United States District Judge